1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KENNETH HARVEY TINCHER,

11              Petitioner,              No. CIV S-08-1721 DAD P

12        vs.

13   D. K. SISTO,

14              Respondent.             ORDER
     _____/

15

16        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the judgment of conviction entered

18   against him by the Yolo County Superior Court in 2005 for receiving stolen property in violation

19   of California Penal Code § 496(a).  Petitioner seeks federal habeas relief on the grounds that his

20   trial counsel rendered ineffective assistance.  Upon careful consideration of the record and the

21   applicable law, petitioner's application for habeas corpus relief will be denied.

22                        PROCEDURAL BACKGROUND

23        On  July 15, 2005, a Yolo County Superior Court jury found petitioner guilty of

24   receiving stolen property.  (Notice of Lodging Documents on November 18, 2008 (Doc. No. 8),

25   Resp't's Lod. Doc. 4 at 313, 315-16.)  On July 18, 2005, the trial court found, following a court

26   trial that sentencing enhancement allegations with respect to prior conviction and three prior

1

1  prison terms to be true.  (Id. at 319-21.)   On September 28, 2005, petitioner was sentenced to a

2  state prison term of twenty-five years to life plus three one-year consecutive enhancement terms

3  for the prior convictions/prisons terms.  (Id. at 365-67, 371-72.)

4          Petitioner appealed from his conviction to the California Court of Appeal for the

5  Third Appellate District.  On May 17, 2007, the judgment of conviction was affirmed in a

6  reasoned opinion.[1]  (Resp't's Lod. Doc. 1.)

7          Petitioner then filed a petition for review with the California Supreme Court.

8  (Resp't's Lod. Doc. 2.)  On July 25, 2007, the California Supreme Court summarily denied that

9  petition.  (Resp't's Lod. Doc. 3.)

10          On July 25, 2008, petitioner filed this federal habeas petition.  On November 18,

11  2008, respondent filed an answer.  Petitioner then filed a traverse on December 22, 2008.

12                          FACTUAL BACKGROUND

13          In its unpublished memorandum and opinion affirming petitioner's judgment of

14  conviction on appeal, the California Court of Appeal for the Third Appellate District provided

15  the following factual summary:

16          About 6:00 p.m. on August 9, 2004, while talking on the telephone
            with her mother, Janine Chandler looked out the window of her
17          home and noticed a white car driving around her cul-de-sac on
            Bidwell Street in Davis.  Her mother mentioned that defendant,
18          Chandler's first cousin, might be "on the run" from something.
            Chandler mentioned the white car to her mother and 30 seconds
19          later, defendant walked by Chandler's window. He then rang her
            doorbell and knocked on her door.  Not knowing why defendant
20          was on the run, Chandler locked the door, stood by the door for a
            few minutes and then called the police.
21
            Shortly thereafter, Davis Police Officers Michael Moore and Steve
22          Ramos arrived at Chandler's and found defendant lying on the
            grass near her apartment.  Prior to arrival, Officer Moore ran
23          defendant's name and date of birth and found no wants or warrants
            in the system.  A white Ford Crown Victoria was parked next to
24

25          _____
                [1]  In affirming the conviction the state appellate court did, however, reverse one of the
26  three prior prison term enhancement findings and modify petitioner's sentence accordingly.
    Resp't's Lod. Doc. 1 at 15.

                                        2

the curb closest to Chandler's apartment.  Officer Moore asked defendant for identification.  Defendant claimed he had none and identified himself as "Jim Clark" with a birth date of April 26, 1958.  Officer Moore learned from dispatch that there were no outstanding warrants for such person.  Officer Moore asked defendant why defendant was there.  Defendant explained he was there to see Chandler, his cousin, and had been dropped off by a friend.  Defendant denied knowing anything about the white car parked at the curb.  Having obtained defendant's consent, Officer Ramos searched defendant and found Ford car keys and a torn piece of envelope with Chandler's name and phone number. Officer Jeff Beasley who had arrived discovered that the Ford car keys in defendant's possession opened the white car parked at the curb.  Officer Beasley felt the rim of a tire on the white car and found that it was warm suggesting that the car had just been driven. Defendant then said the Ford car keys belonged to his brother's car. Defendant claimed he was planning to work on the white car. When Officer Beasley ran the license plate (5BJK126) on the white car, he learned that it was assigned to a Chevrolet registered to Karina Ritchie of Galt.  Officer Beasley then ran the vehicle identification number and learned that the white car belonged to Reba and Bradley Tincher who officers later learned were defendant's mother and brother.  The proper license plate assigned to the white car was 3DGZ155. Officers suspected the car was stolen and searched it.  On the driver's side floorboard, Officer Beasley found a wallet with defendant's driver's license and social security card.  On the back seat under clothing and a box, Officer Beasley found a license plate (4WQY719) later learned to belong to a Chevrolet registered to Robin Grubel of Sacramento.  In the car, the other half of the envelope (seized from defendant's person) was found.

Officer Moore interviewed Chandler who confirmed that defendant is her cousin. Officer Moore understood from dispatch that Chandler believed that defendant may be wanted.  Chandler explained she saw a white car in the street just prior to defendant knocking on her door.  Chandler provided to Officer Moore the Placerville telephone number for defendant's mother and brother. When confronted with his true identity, defendant initially denied it but eventually said that he sometimes went by his real name.

Officer Moore talked on the telephone with Bradley Tincher, defendant's brother. Officer Moore asked Bradley whether defendant had permission to drive the car, when Bradley had last seen defendant and whether defendant was in any kind of trouble with police.

Based on Chandler's belief that defendant may be wanted and learning that defendant resided in El Dorado County, Officer Moore spoke to El Dorado County Deputy Sheriff Foxworthy. Deputy Foxworthy explained that there was a current case against

3

defendant.  A warrant had not yet been issued although charges were anticipated.  Deputy Foxworthy referred Officer Moore to the district attorney's office and asked that the white car be searched for a black-handled hammer, evidence in the El Dorado case. Officer Ramos found such a hammer in a tool box in the back seat. Later on August 9, 2004, Officer Moore received a fax from El Dorado County with a probable cause declaration which described a family fight between defendant and his brother.  At the time of trial, Officer Moore did not know whether any charges had been filed in El Dorado County against defendant in connection with the fight which the officer believed occurred just days if not hours before the current charge.  Officer Moore arrested defendant for possession of stolen property.  When advised of his right to remain silent, defendant stated he understood and would only respond to the questions he wanted to answer.  He explained he gave a false name because he did not know what the officer wanted and that he was afraid because his license had expired.  He denied being related to the white car or license plates in any way.

Chandler stated that the next day, August 10, 2004, Reba and Bradley Tincher picked up the white car which remained parked at the curb in front of Chandler's building.

The prosecutor presented additional evidence related to the license plates found on and in the white car.  Earlier on August 9, 2004, Grubel and her gardener, Steve Bell, found a man near Grubel's Ford Escort and confronted him about what he was doing.  The man claimed the car belonged to him or his girlfriend.  When Grubel and Bell explained that the car belonged to Grubel, the man seemed annoyed and left with his backpack.  Later that evening, Grubel received a call from Davis Police and learned they had the plate to her car (4WQY719).  She checked the front and back of her car and discovered plates which belonged to the white car (3DGZ155).  Grubel had given no one permission to use her plates.

On August 19, 2004, neither Grubel nor Bell positively identified defendant from a photo lineup as the man near Grubel's car.  Bell picked defendant's and another person's photo and was 60 to 70 percent certain with respect to the latter and 40 percent certain with respect to defendant.  Grubel was 75 percent certain it was another person in the lineup.

Ritchie received a call from Davis Police that they had the plate to her car (5BJK126).  She checked her car and discovered a plate which belonged to Grubel's car (4WQY719).  Ritchie had given no one permission to use her plates.

No useable fingerprints were found on the stolen license plates.

(Resp't's Lod. Doc. 1 (hereinafter Opinion).)

ANALYSIS

I.  <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues <u>de novo</u>.  <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

<u>See also</u> <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims.  <u>Delgadillo v. Woodford</u>, 527 F.3d 919, 925 (9th Cir. 2008).  <u>See also</u> <u>Frantz v. Hazey</u>, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that

1 we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such

2 error, we must decide the habeas petition by considering de novo the constitutional issues

3 raised.").

4         The court looks to the last reasoned state court decision as the basis for the state

5 court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned

6 state court decision adopts or substantially incorporates the reasoning from a previous state court

7 decision, this court may consider both decisions to ascertain the reasoning of the last decision.

8 Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court

9 reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

10 habeas court independently reviews the record to determine whether habeas corpus relief is

11 available under § 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v.

12 Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached

13 the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's

14 deferential standard does not apply and a federal habeas court must review the claim de novo.

15 Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

16 II.  Petitioner's Claim

17      A.  Ineffective Assistance of Trial Counsel

18         Petitioner claims that his trial counsel rendered ineffective assistance by: (1)

19 failing to object to inadmissible evidence and unsupported prosecutorial argument; (2) failing to

20 introduce exculpatory evidence; (3) failing to raise concerns related to his restraint; and (4)

21 failing to subject the prosecution's case to meaningful adversarial testing.  (Pet. at 4-8.)

22 Petitioner also claims that the cumulative effect of his trial counsel's errors violated petitioner's

23 right to a fair trial.  (Id. at 8.)  After setting forth the applicable legal principles, the court will

24 evaluate these claims in turn below.

25 /////

26 /////

1    1. <u>Legal Standards</u>

2         The Sixth Amendment guarantees the effective assistance of counsel.  The United

3    States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

4    <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To support such a claim a petitioner must first

5    show that, considering all the circumstances, counsel's performance fell below an objective

6    standard of reasonableness.  466 U.S. at 687-88.  After a petitioner identifies the acts or

7    omissions that are alleged not to have been the result of reasonable professional judgment, the

8    court must determine whether, in light of all the circumstances, the identified acts or omissions

9    were outside the wide range of professionally competent assistance.  <u>Id.</u> at 690; <u>Wiggins v.</u>

10   <u>Smith</u>, 539 U.S. 510, 521 (2003).  Second, a petitioner must establish that he was prejudiced by

11   counsel's deficient performance.  <u>Strickland</u>, 466 U.S. at 693-94.  Prejudice is found where

12   "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

13   proceeding would have been different."  <u>Id.</u> at 694.  A reasonable probability is "a probability

14   sufficient to undermine confidence in the outcome."  <u>Id.</u>  <u>See also</u> <u>Williams</u>, 529 U.S. at 391-92;

15   <u>Laboa v. Calderon</u>, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine

16   whether counsel's performance was deficient before examining the prejudice suffered by the

17   defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness

18   claim on the ground of lack of sufficient prejudice . . . that course should be followed."  <u>Pizzuto</u>

19   <u>v. Arave</u>, 280 F.3d 949, 955 (9th Cir. 2002) (quoting <u>Strickland</u>, 466 U.S. at 697).

20        A reviewing court must "examine the reasonableness of counsel's conduct 'as of

21   the time of counsel's conduct.'"  <u>United States v. Chambers</u>, 918 F.2d 1455, 1461 (9th Cir. 1990)

22   (quoting <u>Strickland</u>, 466 U.S. at 690).  Furthermore, "'ineffective assistance claims based on a

23   duty to investigate must be considered in light of the strength of the government's case.'"  <u>Bragg</u>

24   <u>v. Galaza</u>, 242 F.3d 1082, 1088 (9th Cir. 2001) (quoting <u>Eggleston v. United States</u>, 798 F.2d

25   374, 376 (9th Cir. 1986)).  In assessing an ineffective assistance of counsel claim "[t]here is a

26   strong presumption that counsel's performance falls within the 'wide range of professional

7

1   assistance.'" <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986) (quoting <u>Strickland</u>, 466 U.S.

2   at 689).  There is in addition a strong presumption that counsel "exercised acceptable

3   professional judgment in all significant decisions made."  <u>Hughes v. Borg</u>, 898 F.2d 695, 702

4   (9th Cir. 1990) (citing <u>Strickland</u>, 466 U.S. at 689).

5          2.  <u>Failure to Object</u>

6          Petitioner asserts that his trial counsel failed to object to the introduction of the

7   unrelated and uncharged El Dorado County crime and to the introduction of the hammer

8   recovered from the Crown Victoria into evidence at his trial.  (Pet. at 5.)  Petitioner claims that

9   his prior trial counsel, who had represented him at his first trial on these charges, successfully

10  moved for the exclusion of this evidence.  (<u>Id.</u> at 4.)  After his first trial ended in a hung jury,

11  petitioner was re-tried but was represented by different counsel.  Petitioner argues that his trial

12  counsel at his second trial failed to object to the introduction of the evidence in question and that

13  the "prosecution took full advantage of this."  (<u>Id.</u> at 5.)  He asserts that the prosecutor showed

14  the hammer to the jury "gesturing with it" and arguing that petitioner "had a great motive to be in

15  that car away from El Dorado County, in that car with the phony plates on it.  He was on the

16  run."  (<u>Id.</u>)

17          On appeal, the California Court of Appeal specifically rejected petitioner's

18  argument that his trial counsel rendered ineffective assistance by failing to object to the

19  admission of evidence of petitioner's other crime.  The court reasoned as follows:

20                  Defendant contends that counsel rendered ineffective assistance in
                failing to object to inadmissible other crimes evidence under
21              Evidence Code sections 1101 and 352.  Defendant claims the
                inadmissible evidence was that he was "on the run," Chandler's
22              belief that defendant was wanted in El Dorado County and that
                defendant possessed a hammer used in the El Dorado case. [FN]
23              Defendant argues the other crimes evidence was inadmissible to
                show that he had the propensity to commit the crime charged,
24              receiving stolen property, and prejudicial because it suggested he is
                a violent offender.  Defendant asserts there was no nexus between
25              the El Dorado crime and the crime charged to introduce the
                evidence to show motive.  Defendant argues the lack of the
26              preliminary fact, that is, "a warrant or other evidence tending to

8

establish the police actively pursued [defendant]," made the evidence inadmissible to show motive.  In his reply brief, defendant claims there was no evidence that he knew of the investigation or that he was wanted because he did not testify. Defendant also claims in his reply brief that the jury was not given a limiting instruction on the other crimes evidence.

> FN. Defendant claims Chandler testified that she believed that defendant had an outstanding warrant. His record citations do not support this claim. Officer Moore testified that dispatch and Chandler told him that she believed defendant may be wanted for some reason.

To establish ineffective assistance of counsel, defendant must demonstrate that counsel's performance was deficient and that defendant suffered prejudice as a result.  (Strickland v. Washington, 466 U.S. 668, 687-688 (1984); People v. Ledesma (1987) 43 Cal.3d 171, 216-218.)  To demonstrate prejudice, defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  (People v. Williams (1997) 16 Cal.4th 153, 215.)

Defendant cannot demonstrate that had defense counsel objected, a more favorable result would have occurred.  A trial court previously ruled that testimony regarding an outstanding warrant was admissible to prove motive.  Defendant's first trial on the charge of receiving stolen property resulted in a mistrial after the jury was deadlocked.  Prior to that trial, defendant's then defense counsel moved to exclude testimony regarding an outstanding warrant from another county.  The court denied the motion on the basis that testimony that defendant believed there was a warrant would tend to prove his motive to run.[FN]  New defense counsel's performance in defendant's second trial was not deficient in deciding not to reargue the motion.

> FN. The record reflects the following discussion on the motion:
>
> "THE COURT: All right. There is also motion [sic] we talked about-a motion to exclude testimony regarding an outstanding warrant-
>
> "[DEFENSE COUNSEL]: Right.
>
> "THE COURT:-from another county. And when I indicated to counsel that on the basis of motive that's the motive why he would run, then I would allow testimony that he believed there was a warrant, not whether there was or was [sic] in

reality, whether they believed there was a warrant which would give motive to run.

"[DEFENSE COUNSEL]: That can be proven.

"THE COURT: Yes."

Evidence Code section 1101, subdivision (b), provides in relevant part that "evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive . . . ." other than to prove criminal disposition or propensity is relevant and admissible.  In determining whether circumstantial evidence of a prior uncharged bad act is admissible, the court considers the materiality of the fact sought to be proved, the tendency of the uncharged bad act to prove the material fact and the existence of any rule requiring exclusion.  (People v. Miller (2000) 81 Cal. App.4th 1427, 1447.)

In admitting evidence of other crimes, the court must weigh the probative value of such evidence which must be substantial against the danger of undue prejudice, of confusing the issues or of misleading the jury. (People v. Carter (2005) 36 Cal.4th 1114, 1149.)

Motive is not an element of the crime of receiving stolen property (§ 496, subd. (a); CALJIC Nos. 14.65 [elements of receiving stolen property], 2.51 [motive] ) but the intermediate fact of motive tended to prove the ultimate facts of identification and the required element of knowledge.  (People v. Lewis (2001) 26 Cal.4th 334, 370.)

"Sections 400 through 405 of the Evidence Code define the terms and set forth the procedures to be utilized where the admissibility of evidence is dependent upon the existence of a preliminary fact. As used in these sections, a "'preliminary fact" means a fact upon the existence or nonexistence of which depends the admissibility or inadmissibility of evidence.' (Evid. Code, § 400.)" (People v. Herrera (2000) 83 Cal. App.4th 46, 60.)

Evidence Code section 402 provides: "(a) When the existence of a preliminary fact is disputed, its existence or nonexistence shall be determined as provided in this article. [¶] . . . [¶] (c) A ruling on the admissibility of evidence implies whatever finding of fact is prerequisite thereto; a separate or formal finding is unnecessary unless required by statute."

Under Evidence Code section 403, subdivision (a), "[t]he proponent of the proffered evidence has the burden of producing evidence as to the existence of the preliminary fact, and the preferred evidence is inadmissible unless the court finds that there is evidence sufficient to sustain a finding of the existence of the

preliminary fact, when: [¶] (1) The relevance of the proffered
evidence depends on the existence of the preliminary fact; [or] [¶]
(2) The preliminary fact is the personal knowledge of a witness
concerning the subject matter of his testimony."

Here, defendant contends the missing preliminary fact was a
warrant or other evidence that the authorities were actively
pursuing him.  Simply stated, defendant's claim fails because
Evidence Code section 403 applies only when the preliminary fact
"is disputed." (Evid. Code, § 402, subd. (a).)  To the extent
defendant claims counsel's performance was deficient in failing to
present evidence to dispute the preliminary fact, the claim is
rejected.  Although Officer Moore did not know whether a warrant
issued, there was "other evidence" that El Dorado County
authorities were actively pursuing defendant.  A probable cause
declaration had been issued and the case had been referred to the
prosecutor to file charges.  On this record, we cannot say counsel's
performance was deficient in failing to present contrary evidence.

The jury learned few details about the prior crimes, only that there
had been a fight between defendant and his brother, El Dorado
County law enforcement was investigating defendant's
involvement, somehow a hammer was evidence in the case,
charges were anticipated, and a probable cause declaration had
been issued but a warrant had not yet been issued.  The probative
value was substantial.  The prosecutor used the circumstantial
evidence to argue defendant's motive of using stolen plates to
avoid apprehension by El Dorado County law enforcement.  There
was no danger the jury would have confused the issues.

We conclude that defendant has failed to establish ineffective
assistance of counsel.

Opinion at 10-15.

Here, petitioner asserts that his trial counsel at his first trial successfully "moved
to exclude [the] hammer from evidence and testimony that petitioner was wanted by another
county."  (Pet. at 4.)  Petitioner does not provide any citation to support this assertion and it is
unsupported by the record.  In this regard, prior to petitioner's first trial the trial court actually
held that testimony regarding the belief in an outstanding warrant from another county would be
admissible because such a belief would be relevant to providing a basis for petitioner's motive to
run.  (Reporter's Transcripts on Appeal "RT" at 99.)  Only testimony regarding whether a
warrant actually existed was excluded at petitioner's first trial.  (Id.)  Indeed, Officer Moore

1   testified at the first trial that Jan Chandler told him that she believed that petitioner may have had

2   an outstanding warrant from El Dorado County.  (Id. at 189.)[2]

3             As the California Court of Appeal noted, petitioner's counsel at his second trial

4   was not deficient in deciding not to attempt to reargue an issue that had already been decided at

5   petitioner's first trial, as such an argument would have been meritless.  Moreover, the state

6   appellate court's determination that testimony regarding the belief that petitioner had an

7   outstanding warrant was properly admitted under state law indicates that even if petitioner's trial

8   counsel had objected to the introduction of this evidence, the objection would also have been

9   meritless.  Of course, an attorney's failure to make a meritless objection or motion does not

10  constitute ineffective assistance of counsel.  Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir.

11  2000) (citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)).  See also Rhoades v. Henry,

12  596 F.3d 1170, 1179 (9th Cir. 2010) (counsel did not render ineffective assistance in failing to

13  investigate or raise an argument on appeal where "neither would have gone anywhere");

14  Matylinsky v. Budge, 577 F.3d 1083, 1094 (9th Cir. 2009) (counsel's failure to object to

15  testimony on hearsay grounds not ineffective where objection would have been properly

16  overruled), cert. denied, ___U.S.___, 130 S. Ct. 1154 (2010); Rupe v. Wood, 93 F.3d 1434, 1445

17  (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance").  Thus,

18  petitioner has failed to demonstrate how his counsel's failure to object to this testimony was

19  outside the range of professionally competent assistance.  Strickland, 466 U.S. at 687-688.

20            Even assuming arguendo that the failure to object was an error, petitioner would

21  still be unable to demonstrate prejudice with respect to this aspect of his ineffective assistance

22  claim.  In order to demonstrate prejudice petitioner must show "a reasonable probability that, but

23

24            [2]  Morever, at petitioner's first trial a police department evidence officer testified that one
25  of the items booked into evidence by police following petitioner's arrest was a "finishing
    hammer."  (Id. at 135.)  The hammer itself, however, was ultimately not admitted into evidence,
26  though it was marked for identification.  (Id. at 272.)

for counsel's unprofessional errors, the result of the proceeding would have been different."
Strickland, 466 U.S. at 694.  Even if the hammer and all testimony relating to petitioner possibly
being wanted in El Dorado County had been excluded from his second trial, the evidence of
petitioner's guilt would have remained considerable.  Petitioner gave a false name, lied about
how he arrived at the location, and denied being associated in any way with the Crown Victoria
vehicle.  (RT at 439.)  Officers thereafter found a key to that vehicle in petitioner's pocket, as
well as a torn envelope with the address and phone number of petitioner's cousin, Jan Chandler,
written on it.  (Id. at 440-42, 443.)  The other half of that envelope was found inside the Crown
Victoria.  (Id. at 443.)  Also found inside that vehicle was a wallet containing petitioner's driver's
license and social security card.  (Id. at 455.)  A stolen license plate was in the backseat and a
second stolen plate was attached to the rear of the Crown Victoria vehicle.  (Id. at 583, 591.)

Presented with this evidence, there is not a reasonable probability that the jury at
petitioner's trial would have reached a different verdict if only his trial counsel had successfully
attempted to exclude from evidence the hammer and the testimony that petitioner was possibly
wanted by El Dorado County.  The state court's rejection of this claim was neither contrary to,
nor an unreasonable application of, clearly established constitutional law.  Therefore, petitioner is
not entitled to federal habeas relief on this aspect of his ineffective assistance of counsel claim.

3.  Exculpatory Evidence

Petitioner asserts that his trial counsel was ineffective by failing to introduce
exculpatory evidence at his second trial.  (Pet. at 4.)  Specifically, petitioner argues that his trial
counsel failed to introduce evidence that the reason petitioner gave a false name when confronted
was that he feared there was an outstanding warrant for his arrest for failure to appear at a child
support hearing.  (Id. at 5-6.)  Petitioner also claims that his counsel failed to introduce evidence,
such as police reports, insurance records and DMV records, that petitioner's brother, Bradley
Tincher, had a history of vehicles being "taken" and sometimes returned with the license plates
"switched."  (Id. at 7.)  Petitioner also takes issue with his counsel's failure to introduce evidence

1   that after petitioner's arrest, the Crown Victoria required repair due to the left front brake

2   "locking up and super heating" and that "there was no center console" or "transmission hump" in

3   that vehicle.  (Id. at 7.)[3]

4          At petitioner's first trial, the trial court denied a defense motion to suppress

5   evidence that petitioner was wanted in another county on the grounds that such testimony "would

6   tend to prove his motive to run." (RT at 99.)  Had petitioner's trial counsel argued to the jury that

7   petitioner's behavior was better explained by his belief that he had an outstanding warrant for

8   failure to appear, it appears that such an argument would have only served to strengthen the

9   prosecution's argument that petitioner had a motive to run, as well as possibly negatively

10  impacted the jury's perception of petitioner because of his failure to appear.

11         Additionally, Officer Moore testified at trial that once petitioner's true identity

12  was determined, petitioner explained to officers that he gave a false name "because he was afraid

13  that his license was expired."  (RT at 468.)  Arguing that petitioner actually gave a false name

14  because he was concerned about an outstanding warrant for failure to appear would only attribute

15  an additional inconsistent statement to petitioner, without any possible benefit to the defense.

16  There were therefore a number of tactical reasons why petitioner's trial counsel may have

17  decided not to pursue this issue in the manner petitioner now claims it should have been pursued.

18  This tactical decision does not appear to be unreasonable under the circumstances of this case

19  and thus does not constitute deficient performance.  See Strickland, 466 U.S. at 690 ("strategic

20  choices made after thorough investigation of law and facts relevant to plausible options are

21  virtually unchallengeable").

22         As to petitioner's argument that his counsel was ineffective by failing to introduce

23  police reports, insurance records and DMV records relating to Bradley Tincher's history with

24

25         [3]  This latter, specific claim appears to be unexhausted and has not been addressed by
26  respondent in the answer filed with this court.  Nonetheless, for the reasons set forth below, the
    court will deny relief with respect to this claim pursuant to 28 U.S.C. § 2254(b)(2).

missing vehicles and "switched" license plates, his trial counsel did in fact subpoena Bradley

Tincher as a defense witness.  (RT at 666).  However, Bradley Tincher appeared at petitioner's

trial with counsel and asserted his Fifth Amendment privilege not to testify.  (Id.)  Without

Bradley's testimony it is not clear how petitioner's trial counsel would have effectively presented

this evidence to the jury or even entered these documents into evidence.  Petitioner does not offer

any such explanation as to how his counsel should have proceeded under these circumstances.

Moreover, petitioner has failed to demonstrate any prejudice with respect to this

aspect of his claim.  Petitioner argues at length that it was Bradley Tincher who had the motive to

steal and switch these license plates.  (Traverse at 12-14.)  Nevertheless, petitioner was convicted

of receiving stolen property, not theft.  Thus, even if the all the records relating to Bradley had

been presented to the jury at petitioner's trial, they would not have rebutted the considerable

evidence of petitioner's guilt, which included that petitioner lied about his identity and his

connection to the Crown Victoria, that a key to the to the Crown Victoria and the torn envelope

connecting him to the location were found inside his pocket, that inside the Crown Victoria were

petitioner's driver's license, social security card, the matching end of the torn envelope, and a

stolen license plate.  Presented with this evidence there is no reasonable probability that

petitioner's jury would have reached a different verdict if only Bradley's records had been

presented to the jury.

With respect to the failure to introduce evidence about  the vehicle's brake

"locking up and super heating" and that "there was no center console" or "transmission hump" in

that vehicle, petitioner argues that such evidence could have been used to "impeach" the

testimony of Officer Beasley.  (Traverse at 9.)  Again, petitioner has failed to demonstrate

deficient performance or prejudice with respect to this aspect of his claim.

The importance of the warmth of the vehicle's brake was that it indicated to

Officer Beasley that the vehicle had been recently driven and therefore may have been the vehicle

petitioner drove to the scene of his arrest.  (RT at 582.)  That speculation was confirmed by the

1   discovery that petitioner possessed the key to the vehicle and the finding of petitioner's driver's

2   license and social security card inside the vehicle.  Whether or not the vehicle's brake was

3   actually warm was therefore irrelevant, as that evidence merely resulted in the officers conducing

4   further investigation.  Similarly, the fact that there was no center console or transmission hump in

5   the Crown Victoria vehicle would have at best shown that Officer Beasley's memory was

6   imperfect, but would not have seriously called into question the reliability or credibility of his

7   testimony.  Ultimately the evidence as a whole conclusively linked petitioner to the Crown

8   Victoria whether or not the brakes were warm or the vehicle had a center console or a

9   transmission hump.

10         Accordingly, for the above reasons, petitioner is not entitled to federal habeas

11   relief on this aspect of his ineffective assistance of counsel claim.

12         4. Restraint

13         Petitioner asserts that the trial judge ordered that the jury be in the jury room

14   whenever petitioner was being transported to and from the courtroom.  (Pet. at 8).  Petitioner

15   claims that on three occasions officers transported him to court in view of jurors while he was

16   shackled and chained.  (Id.)  Petitioner argues this led jurors to believe that the case "involved

17   more than just a license plate . . . gave weight to the prosecution's other crimes" argument, and

18   scared one juror who almost "crashed into petitioner in the hall."  (Id.)  Petitioner alleges that his

19   trial counsel provided ineffective assistance by failing to raise an objection regarding the jurors

20   seeing him shackled during transportation.  This specific claim appears to be unexhausted and

21   has not been addressed by respondent in the answer.  However, the court will nevertheless deny

22   relief as to this aspect of petitioner's ineffective assistance of counsel claim pursuant to 28

23   U.S.C. § 2254(b)(2).

24         Assuming petitioner's trial counsel refused to raise petitioner's concerns to the

25   trial judge, this claim would still fail because a jury's brief or inadvertent glimpse of a defendant

26   in physical restraints outside of the courtroom is not inherently or presumptively prejudicial.  See

1   e.g., Ghent v. Woodford, 279 F.3d 1121, 1132 (9th Cir. 2002) (jurors' view of defendant in the

2   hallway and being transported in restraints on several occasions not unduly prejudicial); United

3   States v. Olano, 62 F.3d 1180, 1190 (9th Cir. 1995) (same).  Thus, in cases where jurors observe

4   a defendant in shackles outside of the courtroom, actual prejudice must be demonstrated.  Wilson

5   v. McCarthy, 770 F.2d 1482, 1485-86 (9th Cir. 1985) (a jury's brief, inadvertent observation of a

6   defendant in custody does not compel reversal in the absence of an affirmative showing of actual

7   prejudice); United States v. Halliburton, 870 F.2d 557, 560-61 (9th Cir. 1989) (same).  See also

8   Dupont v. Hall, 555 F.2d 15, 17 (1st Cir. 1977) (noting that even the "most unsophisticated

9   juror" knows that defendants may have to post bail and that some lack the resources to do this);

10   United States v. Leach, 429 F.2d 956, 962 (8th Cir. 1970) ("[i]t is a normal and regular as well as

11   a highly desirable and necessary practice to handcuff prisoners when they are being taken from

12   one place to another, and the jury is aware of this").

13          Petitioner has failed to demonstrate actual prejudice, arguing only that he "feels

14   sure" that these sightings prejudiced him.  (Pet. at 8.)  However, trial counsel was not deficient

15   for failing to raise this issue to the trial judge if petitioner was not prejudiced by the viewing.

16   Petitioner has also failed to demonstrate prejudice stemming from his counsel's alleged error, as

17   it is not reasonably probable that petitioner's jury would have reached a different verdict if only

18   his trial counsel had raised this issue with the trial court.  Accordingly, petitioner is not entitled

19   to federal habeas relief on this aspect of his claim of ineffective assistance of counsel.

20          5. Meaningful Adversarial Testing

21          Petitioner asserts that his trial counsel failed to subject the prosecution's case to

22   "meaningful adversarial testing." (Pet. at 4.)  In this regard, petitioner argues that during his

23   closing argument defense counsel failed to point out to the jury that Jan Chandler was unable to

24   identify the make or model of the white vehicle she saw, was  unable to identify who she saw in

25   the vehicle, or even confirm that the vehicle stopped.  (Traverse at 21.)  Moreover, petitioner

26   alleges his trial counsel failed to object when the prosecutor argued to the jury that Chandler did

1    in fact see the White Crown Victoria arrive.  (Id.)  This specific claim appears to be unexhausted

2    and has not been addressed by respondent in the answer.  However, the court will nonetheless

3    deny relief with respect to this aspect of petitioner ineffective assistance of counsel claim

4    pursuant to 28 U.S.C. § 2254(b)(2).

5            Petitioner's apparent belief in the importance of Chandler's testimony in this

6    regard is misplaced.  Petitioner was accused of violating California Penal Code § 496(a).  "To

7    obtain a § 496(a) conviction, the prosecution must prove only that: (1) the property was stolen;

8    (2) the defendant knew that the property was stolen; and (3) the defendant had possession of such

9    property."  Castillo-Cruz v. Holder, 581 F.3d 1154, 1161 (9th Cir. 2009).  There was no dispute

10   at petitioner's trial that the license plates were stolen.  Moreover, there was considerable

11   evidence introduced that petitioner had possession of the plates since they were found attached

12   to, and inside of, the Crown Victoria, as were petitioner's driver's license and social security

13   card.  As noted above, the key to the vehicle was also found in petitioner's pocket, as was the

14   other half of a torn envelope that was found in the car.  Thus, the evidence introduced at trial

15   linking petitioner to the Crown Victoria was overwhelming regardless of Chandler's testimony.

16            For the prosecution, the central issue at trial therefore was to prove that petitioner

17   knew the plates were stolen.  Thus, during closing arguments the prosecutor repeatedly raised

18   petitioner's denial to authorities that he had anything to do with the Crown Victoria, implying

19   that it indicated petitioner's knowledge of the stolen plates.  In this vein, the prosecutor argued:

20        And its significance to you, I would suggest, is that his
            representation to the police were to completely evade any
21        connection with that white Crown Victoria.

22                             * * *

23        We don't know who may have dropped the defendant off.  You're
            left - - I suppose we're left to guess as to who that person may have
24        been.  But we do know this, that everything that the defendant did
            was to keep distance from that White Crown Victoria.  It's almost
25        as if that car was completely radioactive.  He did not want to be
            anywhere near it.
26                             * * *

1    And I would suggest to you that the reason this car was radioactive
     because we know it had - - it was kind of like - - wasn't it a crime
2    scene on wheels?  Stolen plate on the back.  Stolen plate in the
     inside of the car.

3

4    (Id. at 683, 688)

5          It appears likely that petitioner's counsel made a tactical decision to refrain from

6    focusing his challenge on the relatively unimportant testimony of Chandler, which was primarily

7    used to describe the scene and explain the arrival of the police, and instead to focus on the

8    elements of the offense.  Such a tactical decision was not unreasonable under the circumstances

9    of this case and thus does not constitute deficient performance.  See Strickland, 466 U.S. at 690

10   ("strategic choices made after thorough investigation of law and facts relevant to plausible

11   options are virtually unchallengeable").  Moreover, even if trial counsel's performance was

12   deficient in this regard, even the most successful attack upon Chandler's testimony would not

13   have altered the essential facts of this case as established by the evidence.  Thus, petitioner has

14   failed to show "a reasonable probability that, but for counsel's unprofessional errors, the result of

15   the proceeding would have been different."  Strickland, 466 U.S. at 694.  Accordingly, he is not

16   entitled to federal habeas relief on this aspect of his ineffective assistance of counsel claim.

17        6.  Cumulative Effect

18         Petitioner asserts that the cumulative effect of the alleged errors of his counsel

19   denied him his right to a fair trial.  (Pet. at 8.)  This specific claim also appears to be unexhausted

20   and has not been addressed by respondent in the answer filed in this action.[4]  The court will

21

22         [4]  As indicated above, respondent has failed to address in any way several claims
     specifically presented by petitioner in his application for federal habeas relief.  It may well be that
23   counsel for respondent believed those claims to be unexhausted.  Nonetheless, that does not
     relieve respondent of the obligation to respond to the claims by arguing a failure to exhaust either
24   in the answer or by way of motion to dismiss.  Most troubling, this practice of simply not
     responding to claims that are apparently believed to be unexhausted, is being adopted by a
25   number of deputies within the Attorney General's Office.  In the future, the undersigned intends
     to require respondents to answer ignored claims or issue orders to show cause why sanctions
26   should not be imposed for respondent's failure to do so.

1   nevertheless deny relief as to this aspect of petitioner's ineffective assistance of counsel claim

2   pursuant to 28 U.S.C. § 2254(b)(2).

3          The Ninth Circuit has concluded that under clearly established federal law, the

4   combined effect of multiple trial errors may give rise to a due process violation if it renders a trial

5   fundamentally unfair, even where each error considered individually would not require reversal.

6   Parle v. Runnels, 505 F.3d 922, 927 (9th. Cir. 2007) (citing Donnelly v. DeChristoforo, 416 U.S.

7   637, 643 (1974) and Chambers v. Mississippi, 410 U.S. 284, 290 (1973)).  "The fundamental

8   question in determining whether the combined effect of trial errors violated a defendant's due

9   process rights is whether the errors rendered the criminal defense 'far less persuasive,'

10  Chambers, 410 U.S. at 294, and thereby had a 'substantial and injurious effect or influence' on

11  the jury's verdict."  Parle, 505 F.3d at 927 (quoting Brecht v. Abrahamson, 507 U.S. 619, 637

12  (1993)).  See also Hein v. Sullivan, ___ F.3d ___, 2010 WL 1427588, *15 (9th Cir. Apr. 12,

13  2010) (same).

14         This court has addressed each aspect of petitioner's claim of ineffective assistance

15  of counsel above and has concluded that no error of constitutional magnitude occurred.

16  Therefore, the court also concludes that the alleged errors of petitioner's counsel, even when

17  considered in combination, did not render petitioner's defense "far less persuasive," nor did they

18  have a "substantial and injurious effect or influence on the jury's verdict."  Parle, 505 F.3d at

19  927.  Accordingly, petitioner is not entitled to habeas relief with respect to his claim of

20  cumulative error.

21                                CONCLUSION

22         For the foregoing reasons, IT IS HEREBY ORDERED that petitioner's

23  application for a writ of habeas corpus (Doc. No. 1) is denied.

24         Under Rule 11 of the Federal Rules Governing Section 2254 Cases the district

25  court must issue or deny a certificate of appealability when it enters a final order adverse to the

26  applicant.   A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant

has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The court must either issue a certificate of appealability indicating which issues satisfy the

required showing or must state the reasons why such a certificate should not issue.  Fed. R. App.

P. 22(b).

                For the reasons set forth above, petitioner has not made a substantial showing of

the denial of a constitutional right.  Accordingly, a certificate of appealability should not issue in

this action.

DATED: May 12, 2010.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
tincher1721.hc.wpd